## Phillips, Appellant, *v.* Pilling.

*Contract—Sale—Coal—Shortage of cars.*

Where a contract for the sale of coal from a designated mine provides that "if there should be a shortage of cars shipment will be divided from time to time in fair proportion on all orders," the "shortage of cars" means a shortage of car supply at the mine from which the coal is produced.

Argued March 26, 1906.  Appeal, No. 53, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1903, No. 4,078, on verdict for defendants in case of Charles S. Phillips, Henry H. Ashley and Charles P. Hunt, copartners, trading as Parrish, Phillips & Co., *v.* William S. Pilling and Theron I. Crane, copartners, trading as Pilling & Crane.  Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Assumpsit for breach of a contract for the sale of coal.  Before SULZBERGER, J.

The facts are stated in the opinion of the Supreme Court.

The plaintiff presented the following points :

1. It was the duty of the defendants to purchase or acquire coal of the kind agreed upon and deliver the same to the plaintiffs from the market or from any source from which they could have acquired the same, and which was known to them, or, with due diligence, might have become known, and they would not be excused from the delivery of the coal merely because the single seller with whom they made a contract failed to deliver the coal to them which they had purchased for the purpose of filing the contract in suit.  *Answer :* The principles, some of which are quite correct, stated herein, are in such complicated relations and require so much qualification, that I think I prefer to stand by the announcement of the legal principles, and the relations of the facts to them, that have been given in my general charge, and I decline to affirm this point as put. [1]

2. The shortage of cars which, under the terms of the contract would excuse the defendants from making deliveries except proportionally from time to time on all cars, means an in-

ability of the defendants to obtain car-loads of coal of the kind agreed upon for delivery to the plaintiffs in the open market, and the mere fact that the defendants were unable to obtain the delivery to them of sufficient cars of coal to fill the contract with the plaintiffs under the contract or arrangement under which they expected to receive them, is not sufficient to justify the failure of the defendants to deliver the coal at the rate called for by the contract of 2,000 tons per month. *Answer:* For the same reason, I decline to affirm the second point. [2]

Defendant presented these points :

1. The contract between the plaintiffs and the defendants expressly provided that if there should be a shortage of cars during the period fixed for delivery, shipments should be divided from time to time in fair proportion on all orders. If, therefore, you find that there was such shortage of cars, and that by reason thereof an insufficient quantity of the kind of coal to which under their contract plaintiffs were entitled, was obtainable by defendants, delivered f. o. b. cars at South Amboy, then they were only obliged to deliver to plaintiffs such quantity of such coal so delivered, as was the fair proportion of the plaintiffs, upon all defendants' orders for such coal. In determining what was such fair proportion, you will take into consideration all orders for the kind of coal which, before the happening of the shortage and in ignorance that there would be any such shortage, they had bound themselves to fill, and which but for such shortage they could have filled. *Answer:* I affirm that point. [3]

2. In determining the total quantity of coal of the kind which plaintiffs bought, which, f. o. b. cars at South Amboy, was shipped to defendants, you will not include any of the kind of coal for which transportation could only be secured in cars of railroad companies, other than the Pennsylvania Railroad Company, which the latter would not transport to South Amboy. *Answer:* I affirm that point. [4]

3. If you find that to meet the pressing demands of the plaintiffs for coal, bituminous coal was delivered to them from time to time, to a greater extent than their proportion of the kind of coal, which they bought, then the defendants had a right, when the kind of coal that they bought arrived at South Amboy, to convert the same to their own use, to the extent of

the excess coal theretofore delivered under such demand, if any, to the plaintiffs.  *Answer :* I have, in general terms, stated that substantially.  I affirm this point.  [5]

8. There was no guarantee by the defendants to the plaintiffs that the former would receive the full quantity of coal purchased.  There was an exemption of liability for any failure in deliveries, prevented by interruptions of transportation, shortage of cars, or any cause or occurrence beyond defendants' control, provided that if the delay was because of a shortage of cars, shipments should be divided, from time to time, by the defendants in fair proportion on all orders.  *Answer* : I affirm that point.  [6]

9. Whether the contract was for Nonpareil or for Sonman Shaft coal, if you find Nonpareil coal designated a coal mined only at the Nant-y-Glo mine, and that Sonman Shaft coal designated a coal mined only at the Sonman Shaft mine ; and if you find that before entering into their contract with the plaintiffs, the defendants had secured a supply of Nonpareil or of Sonman Shaft coal, to be delivered at the times stipulated for with plaintiffs, amply sufficient as to quantity, to fill the order of the plaintiffs, and all other orders accepted by the defendants ; and if you find that they would have received such supply and could have filled the contract with the plaintiffs, saving for the fact that there was a shortage of cars, interruption of transportation, or a cause or occurrence beyond the defendants' control which prevented, then I instruct you that it was the duty of the defendants to deliver to the plaintiffs only a fair proportion, apportioned amongst all such orders, of the coal which they, from time to time, received, of the kind designated.  If they did furnish such proportion, they are not liable in damages.  If they failed, they are only liable to the extent of the deficiency in the failure to deliver the proper proportion calculated on all such orders.  It was not the duty of the defendants to deliver any other kind of coal than that stipulated for.  *Answer :* I affirm that point.  [7]

10. If prevented from delivering coal of the kind stipulated for by any of the causes above specified, and if coal, because of any such causes, had risen in price in the market, it is not the duty of the defendants to go out into the market and to purchase such other coal at such prices, enhanced by reason of

said causes. *Answer :* Subject to the limitations in my general charge, as to the effect in case this was a general contract for bituminous coal, I affirm that point. [8]

Certificate and judgment for defendants for $1,222.14. Plaintiffs appealed.

*Error assigned* were (1–8) above instructions, quoting them.

*H. B. Gill,* with him *John R. Read, Silas W. Pettit* and *Louis B. Runk,* for appellant.—Under the contract between the Sonman Shaft Company and the Keystone Company it was clearly the duty of the Keystone Company to furnish the cars and have them at the mines for the Sonman Shaft Coal Company to load, and the Sonman Shaft Coal Company was not obliged to furnish the cars : Hocking v. Hamilton, 158 Pa. 107; Haff v. Pilling, 134 Fed. Repr. 294.

*John G. Johnson,* with him *Henry P. Brown,* for appellees.

OPINION BY MR. JUSTICE ELKIN, April 30, 1906 :

The question raised by this appeal must be determined by a proper construction of the contract entered into between the parties. It is in writing, and provides for the sale and delivery of 14,000 gross tons of coal of a particular kind therein specified at a particular place therein named. The railroad scale weights at point of shipment were to govern the settlement of accounts between the contracting parties. The coal was to be delivered in cars on the piers of the Pennsylvania Railroad Company at South Amboy. The contract itself named Nonpareil bituminous coal, but it was shown at the trial, and conceded here, that the use of this term was a mistake, Sonman shaft coal being intended. We must therefore accept this as an established fact in the consideration of the case. It is further provided in the contract that the seller will not be responsible for delay in deliveries if prevented by strikes, combinations of miners, accidents in the mines, interruptions of transportation, or other causes therein mentioned. These specific matters need not be considered because appellees do not attempt to excuse their nonperformance of the entire contract on account of the conditions herein above stated. They do set

up the following covenant as a justification of their failure to make full deliveries, to wit: " It is understood and agreed that if there should be a shortage of cars, shipment will be divided from time to time in fair proportion on all orders." The evidence clearly shows that there was a shortage of cars during the period covered by the contract by reason of which appellees fell several thousand tons short in making the required shipments. This suit was instituted to recover for breach of the contract. The court below held that the contract referred to a particular kind of coal at a designated mine, and that the clause relating to car supply meant a shortage of cars at the mine from which the coal was produced. The correctness or incorrectness of this ruling is the pivotal point in the case.

Appellants contend that it was the duty of appellees to deliver them 14,000 gross tons of coal of the same general quality as that named in the contract, and that it made no difference whether it was Clearfield coal, or Sonman Shaft coal, or Sonman coal, or any other coal of a similar character. We cannot accept this contention as sound, because it is otherwise written in the contract. The vendors sold and the vendees bought Sonman Shaft coal. This coal is only mined at one place, and by one company. It was to be weighed on the railroad scales at the mines. It was to be transported by the Pennsylvania Railroad Company and delivered to consignees on the railroad piers at South Amboy. The contract is not susceptible of any other interpretation. It was a proper contract to make. It is customary as between the buyer and seller of coal to designate the particular kind to be delivered. Bituminous coal varies in quality even in the mines on adjoining properties. The constituent elements upon which the quality of coal depends are fixed carbon, volatile matter, sulphur, ash and phosphorus. The proportions in which these elements are found in a seam of coal determine its value for the use intended. Some coal is high in fixed carbon and volatile matter, and low in sulphur, ash and phosphorus. In other seams these conditions may be reversed, and in no two mines are they exactly the same. For these reasons some coal is adapted to the making of coke, some for steam, some for foundry use, and some for manufacturing purposes generally. The buyer has these conditions in mind when he makes his contract for future supply. Nature did

not fix these proportions with any degree of uniformity.    It is
safe to assume that in no two mines in the bituminous district
of our state do the analyses show the proportions of the con-
stituent elements to be exactly the same.    The purchaser in
making a contract has in mind two things, the use for which
the coal is intended and the quality adapted to that use.    He
makes his contract upon this basis, and has a right to insist
upon the performance of the covenant relating thereto.    It is
to be assumed that appellants had a customer familiar with the
quality of Sonman Shaft coal which was suited to his purpose,
and that the contract was entered into with this understanding.
It will not do to say that the purpose of the contract can be
defeated in furnishing any quality of coal when a particular
kind is designated.    If the seller in this case had undertaken
to deliver Tearing Run, or Bear Run, or Clearfield coal, the buyer
could have refused to accept it because it was not a performance
of the covenant to furnish the particular kind of coal specified in
the contract.    The rule should work both ways.    The whole ques-
tion was submitted to the jury in a careful and well-considered
charge by the learned court below, with instructions that if the
testimony satisfied them that the shortage of cars prevented
appellees from completing full deliveries, and that a fair pro-
portion of the coal mined had been furnished appellants, there
could be no recovery.    The jury found these facts in favor of
appellees, and we see no reason to disturb their finding.

Assignments of error overruled and judgment affirmed.