## Chandler, Appellant, *v.* Lafferty et al.

*Vendor and vendee—Sales—Conditions of sale—Compliance with car-shortage.*

In an action of assumpsit for breach of contract, it appeared that the plaintiff had contracted to deliver to the defendant certain specified shipments of potatoes at different times, "weather and car conditions permitting." The contract provided that "should weather and car conditions prohibit the shipments to be made as above stated, then they shall be made as soon thereafter as weather and car conditions will permit." A car shortage occurring, the vendor prorated the available cars among his several customers and delivered to the defendant several shipments of potatoes which were less than the number contracted for.

As a defense to a demand for payment for the potatoes delivered, the defendant set up the loss resulting from failure to deliver the total amount mentioned in the contract, and claimed that the plaintiff had no right to prorate the cars among his customers, but should have allocated all of them for the purpose of carrying out this particular contract.

*Held:* that the car shortage was of a character contemplated in the contract, and that the plaintiff was under no duty to allot all of the cars to the defendant, and that a recovery for the total price of the potatoes delivered should be sustained.

Argued May 2, 1924. Appeal, No. 146, Oct. T., 1924, by plaintiff, from judgment of C. P. Blair Co., March T., 1921, No. 93, on verdict for plaintiff in the case of J. W. Chandler v. Fred B. Lafferty and Samuel A. Lafferty, Individually and Trading under the General Copartnership and Style of Lafferty Brothers. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit for breach of contract. Before EVANS, P. J. 47th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $10,257.47. On a point reserved the court deducted from that sum an amount claimed for appellant's loss caused by the defendant's failure to ship all the potatoes mentioned in the contract and entered judgment for the plaintiff for $961.75. Plaintiff appealed.

*Error assigned* was, among others, the decree of the court.

*Robert W. Smith,* and with him *Marion D. Patterson,* for appellant.—Car shortage is recognized as an excuse for nondelivery when provided against and equitable distribution required: Phillips v. Pilling, 215 Pa. 64; Hatfield v. Thomas Iron Company, 208 Pa. 478; Rowland & Co. v. Lehigh Coal & Navigation Company, 28 Pa. 215; Jessup & Moore Paper Co. v. Piper et al., 133 Federal Reporter 198; Clinton Ford M. & F. Co. v. Eby, 37 Lanc. 121; King v. Adams, 37 Lanc. 315; Fuel & Supply Co. v. Coal and Mining Co., 284 Fed. Rep. 227; Kellogg v. Boutwell Mining and Grain Co., 196 N. Y. 747.

*Thomas C. Hare,* and with him *Robert F. Hare,* for appellee.—If any cars available for consignment to defendants were received by plaintiff during the period provided for shipment, the plaintiff was required to apply them upon the contract: 35 Cyc. 244; Bradley v. McHale, 19 Pa. Superior Ct. 300, 303; Montooth Boro. v. Railway Company, 206 Pa. 338, 340; Cottrell v. Smokeless Fuel Co., 148 Fed. Rep. 594, 597; Runyan v. Culver, L. R. A. 1916F, 3, 10; Cleveland & Western Coal Co. v. Cyclop Steel Co., 278 Pa. 346, 350; Holzheimer v. Lit Brothers, 262 Pa. 150, 153; Gilmore v. Alexander, 268 Pa. 415, 421; MacNeir v. Wallace, 252 Pa. 323, 325.

OPINION BY LINN, J., July 2, 1924:

Appellant sued for the contract price of potatoes sold and delivered; he had a verdict for $10,257.47. On a point reserved, the court deducted from that sum an amount claimed as defendants' loss caused by appellant's omission to ship all the potatoes defendants bought, and entered judgment for appellant for only $961.75. He appeals and presents but one question: whether the provision of the contract, concerning "car conditions," relieved him.

Both parties were merchants,—"dealers in produce by wholesale,"—the plaintiff at Exmore, Virginia, the defendants at Altoona, Pennsylvania. The contract is dated February 14, 1920; provides for the sale of 4,000 barrels of specified grade, &c., at $5.25 per barrel, f. o. b. shipping point, Exmore, Virginia; "shipments to be made weather and car conditions permitting, evenly distributed between June 20th and July 25th, should weather and car conditions prohibit the shipments to be made as above stated, then they shall be made as soon thereafter as weather and car conditions will permit, but not more than one car to be shipped in any one day." The interpretation of that provision determines the decision of this appeal.

As the conduct of the parties shows that shipment was to be made in cars ordered by the seller, we have no question concerning the duty of supplying the cars. The first car was shipped June 25th; the second, June 29th; the third, July 3d; the fourth, July 13th; the fifth, July 21st; four cars were shipped July 22d and five on July 23d; the shipments in excess of one car per day were by agreement. Defendants stated they would accept none thereafter, so that none were tendered. The jury found, in answer to a specific question submitted, that 2,453 barrels were shipped. In defense, the vendees averred their loss as a set-off, claiming damages for nondelivery of the remainder of the 4,000 barrels. At trial, the parties agreed that defendants' loss, if entitled to it,

on the potatoes not shipped, was $5.25 per barrel (some doubt appeared at the oral argument whether this had been agreed to, but as we find at three places in the charge of the court, that the jury was instructed that the loss per barrel was $5.25, and as the trial judge in his opinion entering judgment, again states that it was so agreed, and as the agreement was not questioned at any time in the court below, we also accept it).

Plaintiff had several contracts antedating defendants' for the shipment of potatoes to other vendees, and some eighty made later, the last, in May; to fulfill all, he required 697 cars. He sought to justify such shipments as were made to defendants by showing that the car conditions at shipping point prevented the even distribution of shipments to them, and that he complied with the contract by a fair distribution among all his vendees of available cars, saying, "I made the best equitable distribution of the cars I could make." "I tried to give the man who was farthest behind, the cars." Appellees stand on appellant's statement that in June he had "seventy-five cars," "that could have been shipped to Lafferty Brothers" if he had had no other obligations; and that during the July period, he also had cars for defendants' shipments, if he had not distributed them as he described. He testified that he ordered sufficient cars from the railroad company from day to day, to make all the daily shipments required by all his contracts, but that, with exceptions now immaterial, the railroad company did not supply him with as many available cars as he ordered, because of a car shortage, and that he was also hindered by car regulations requiring return movements of cars in the direction of the road owning the cars. The evidence on both sides shows the car shortage existed.

In charging the jury, the learned trial judge said he was in doubt whether the provision in the contract permitted plaintiff to make the car allotment to which he testified, and that the court would therefore reserve that

point for future consideration, but would submit to the jury whether, in the circumstances, plaintiff had dealt fairly, as related to this contract, with the car conditions described in the evidence. The verdict determines that fact for the plaintiff. On subsequent reflection, the court concluded that as plaintiff had cars at his disposal, that might have been used for shipment to defendants, and had no right to allot them as described, he had not performed his obligation, and that defendants' agreed loss ($5.25 per barrel, for 1,547 barrels), must be credited on the verdict; judgment was accordingly entered for plaintiff for the difference only.

The question before us, then, on plaintiff's appeal is, what is the meaning of "shipments to be made......car conditions permitting, evenly distributed between June 20th and July 25th, should......car conditions prohibit the shipment to be made as above stated, then they shall be made as soon thereafter as......car conditions will permit but not more than one car......"

The words were used by merchants in February, for conduct some months later; the subject matter of their contract required transportation by rail. There is no evidence of any car shortage when plaintiff's contracts were made; it began June 1st. In recent years, scarcity of cars for shipments of various commodities at certain seasons has become quite usual; railroad regulations requiring shipment of foreign cars toward home stations at times create car conditions delaying shipment in one direction, though cars remain available for shipment in the opposite direction: (Hatfield v. Thomas Iron Co., 208 Pa. 479, 485, is an example of the effect of that regulation). Plaintiff's obligation to ship was not absolute but contingent; within the period, he must ship, "car conditions permitting." When the time for shipment arrived, "car conditions" did not permit the even distribution of cars one a day between the dates specified. These car conditions were not caused by plaintiff; it is not suggested that he did anything or omitted anything

contributing to the "car conditions" which interfered with more expeditious delivery; he was a wholesale dealer, and, as the court told the jury, it was to be expected that he would have other contracts for shipment. He shows that though he ordered sufficient cars to comply with his obligations to all his vendees, including defendants, the railroad company could not supply them, and supplied only a part; he gives the number ordered each day and the number received. He concedes that the contingency "car conditions permitting," is an exemption within which he must bring himself and he contends that proof of the car conditions so outlined, established that he complied with his obligation; that while he was contingently obligated to deliver more cars each day than the railroad supplied, he met the contingency subject to which defendants contracted, by a fair and equitable distribution of the supplied cars among all to whom he was thus contingently liable; that, accordingly, when defendants declined to receive the unshipped portion of the purchase, he was relieved from shipping.

If then, his duty to ship was contingent on "car conditions permitting," and if they did not "permit," as the jury has found, what is plaintiff's default? Why should he not hold his verdict?

That question was thus answered by the learned trial judge in disposing of the reservation: "In the present case the only excuse offered and set up was the failure to get cars but the plaintiff's own testimony and admissions showed he had ample cars to make complete shipments on defendants' contracts. He saw fit to prorate or apply them on other contracts but having done so, he laid himself open to a claim for damages on the part of the defendants for failure to comply with his contract with them." Authorities were quoted to the effect that impossibility of performance arising after making a contract, will not excuse; that a seller promising unconditionally to deliver, takes the risk of performing, notwithstanding inability subsequently caused by inevitable accident or

circumstances beyond control.    Counsel for appellees base their principal contention on the same proposition. This court cannot assent to the application of that rule. Performance did not become impossible; the shipper's obligation was conditional, not absolute.    Indeed, in one part of their brief, appellees' counsel say "that what the parties here meant was that if the plaintiff......could not procure, between said dates, sufficient cars to deliver the contract requirements, he should not be held to the distribution provided in the contract.    If the plaintiff had in mind a general car shortage and, in the event of his inability to obtain all the cars necessary for his business, the privilege of prorating the cars received, he should have made specific reservations concerning these contingencies in his contract."    But that construction of the conditional character of the obligation is too narrow, and is unreasonable.    In M'Keefrey v. Coke &c. Co., 56 Fed. 212, the Circuit Court of Appeals for this circuit, in considering a car shortage and an exemption from"......the railroad company's failure to supply transportation......or other causes of delay beyond our control," said: "The contention that the plaintiff should have supplied them with all the cars received from the railroad company, up to the required number, and if not, that a distribution should have been made upon the basis of the orders on hand at the date of the contract, is not only against common usage, as we have seen, but is unreasonable.    If sustained it would be destructive to the trade.    No manufacturer could continue his business under such a rule."

The term "car conditions" in the contract before us has a meaning; it was used by merchants; it makes contingent what without more would be an absolute obligation to ship.    The shipper assumed the burden of bringing himself within the contingency, and, as there was sufficient evidence on the subject from which the jury found that he had done so, we must sustain the second assignment of error: Hatfield v. Iron Co., supra; Phil-

lips v. Pilling, 215 Pa. 64; Delmont Gas Coal Co. v. Alkali Co., 275 Pa. 535, 540; Barsky v. Lutz, &c., 74 Pa. Superior Ct. 449; M'Keefrey v. Coke &c. Co., Supra; Jessup & Moore Paper Co. v. Piper, 133 Fed. 108; Luhrig Coal Co. v. Jones &c. Co., 141 Fed. 617, 621.

The judgment is reversed and the record is remitted with instructions to enter judgment on the verdict.