S. E. THOMASON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58987. Promulgated November 27, 1935.

*Willis D. Nance, Esq.*, for the petitioner.
*Paul D. Page, Jr., Esq.*, for the respondent.

580

MELLOTT: We shall discuss separately the two questions involved. The first is whether a deductible loss occurred in connection with the sale of the stock. Petitioner contends that the above facts show that he sustained a loss in 1928 of $73,333.33 and that such loss is deduct-

ible under section 23 (e) of the Revenue Act of 1928. The section relied upon allows as a deduction from gross income " losses sustained during the taxable year * * * (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

Petitioner partially states his position by adopting the language of this Board in *David Stewart*, 17 B. T. A. 604:

Ordinarily, where an individual sells securities to a corporation at less than the cost of the securities, the sale establishes the amount of the individual's loss for income-tax purposes. It has been shown in this case that the petitioner sold his securities to a corporation for less than those securities cost him. Why, then, should he not have a deduction for a loss?

Respondent does not question the correctness of the above decision, but contends that the transfer of the 5,000 shares of the Journal Co. stock by the petitioner to the International Paper Co. was not a sale for a consideration of $10,000, but was merely a part of, and an incident to complete performance of an " entire contract " between petitioner and his associate on the one hand, and the International Paper Co. on the other.

Petitioner argues that the contract is a severable contract and that the consideration for the sale of the stock " is entirely separate from the consideration for the making of the $1,000,000 loan by the International Paper Company." He contends that the express language of the contract shows an intention of the parties to make a division and apportionment of the " consideration ", and that the price to be paid is to be " apportioned to each item according to the value thereof and not as one unit."

Both parties cite the rules laid down in Corpus Juris for determining whether the contract is entire or severable. (13 Corpus Juris, p. 561, *et seq.*) They agree that ordinarily if the consideration is single the contract is entire; but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable. Where, however, the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or a part of a round sum, the contract will ordinarily be regarded as severable. This rule applies even though the contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such, and not to them as part of one whole. (13 Corpus Juris, p. 563, sec. 528.)

The courts have found it very difficult to lay down a rule which will apply in all cases, frequently stating that each case must depend very largely on the terms of the contract involved. This case must

be so determined, though the testimony may aid us in giving it the proper construction.

Petitioner testified that he was motivated in transferring the shares of stock to the paper company by his agreement to do so. He also stated that he would not have sold them on the open market for $10,000 on the date they were transferred.

Petitioner was a man of means, with a background of legal training and experience of several years as a practicing attorney, and vice president and general manager of a large metropolitan newspaper. This circumstance makes it quite improbable that he would have expended the sum of $83,333.33 in the " purchase " of stock and within one week thereafter would have " sold " it at a loss of $73,-333.33. We do not mean to infer that such a thing could not happen; but we are concerned with ascertaining whether it did happen in this case.

While petitioner testified that in his opinion the loan would have been made without the sale of the stock to the International Paper Co., such testimony can not vary the terms of the written contract. The contract is before us and must be construed independently of the petitioner's conclusion as to what was in the minds of the contracting parties.

The law furnishes certain rules for the construction of written contracts. These rules should so far as possible be applied with consistency and uniformity. The primary rule is that we must, if possible, ascertain and give effect to the mutual intention of the parties so far as that may be done without contravention of legal principles. The intention of the parties is to be deduced from the language employed by them. The contract must be construed as a whole and the intention of the parties must be ascertained from the entire instrument and not from detached portions. (13 Corpus Juris, p. 525, sec. 486; *Uinta Tunnel Min. & Transp. Co.* v. *Ajax Gold Mining Co.*, 141 Fed. 563, 566; *Cleveland-Cliffs Iron Co.* v. *East Itasca Mining Co.*, 146 Fed. 232, 235; *United States* v. *Ansonia Brass & Copper Co.*, 218 U. S. 452, 467; *Green County, Kentucky* v. *Quinlan*, 211 U. S. 582, 594.)

Construing it as a whole, is it entire or severable and divisible? It provided that upon the delivery and payment for the debentures 10,000 shares of stock would be delivered. Manifestly, if the debentures had not been taken by the paper company no correlative obligation would have rested upon petitioner and his associate to deliver the shares of stock and such delivery could not have been compelled by suit or otherwise. This much can be gathered from the face of the contract.

If, in the construction of the contract, we give consideration to the testimony of the petitioner, the fallacy of his present contention simply becomes more apparent. Under cross-examination, he testified:

Q. The purpose of the entire contract was to secure this financing?
A. That is correct.
Q. And one of the provisions of the contract was that you were to transfer this stock to the International Paper Company, was it not?
A. That is correct.

Another circumstance which points very clearly to the inevitable conclusion that the contract was intended to be entire is the second portion of paragraph No. 8, set out in full in the findings. In that paragraph it is stated that " as *further* consideration " the International Paper Co. is to pay the sum of $20,000. The use of the word " further ", we believe, clearly indicates that there were other considerations. One of them, obviously, was the purchase of the debentures and the financing of the entire transaction. Clearly, petitioner received for the transfer of the shares in question more than his aliquot part of the $20,000 paid. No testimony was introduced from which we can ascertain the value of such other consideration. We are satisfied it had some value. Gain or loss can not be ascertained unless all factors entering into its computation are proven. The burden of making such proof was upon petitioner.

But the petitioner argues that the consideration for the making of the million dollar loan did not flow from him and his associate, but from the various corporations involved. He contends that they did not pay any price for the loan, that it was not made to them personally, but to the holding company, and that they individually received no part of it. Let us analyze that contention.

The Bryan-Thomason Newspapers, Inc., was not a party to the contract. On the date the contract was executed it was nonexistent. Petitioner and Bryan agreed to form such company and to cause it and other corporations also to be formed by them to do certain acts. They were the owners of all of the stock of the holding company. *Their* contract made it incumbent upon *them*—petitioner and Bryan—to deliver to the International Paper Co. the stock here in question, " upon the delivery of and payment for said debentures." The purchase of the debentures was contingent upon the delivery of the stock. That such was a fact is plainly shown by the contract; but if there were any doubt about it, petitioner in his testimony has dispelled it.

We therefore hold that the cash received by petitioner was not the sole consideration for the transfer of the stock, and that his loss is

not the difference between the cost of the stock and the amount of cash so received. It follows that judgment upon this issue should be entered in favor of the respondent.

The next question is whether the petitioner is entitled, under section 23 (b) of the Revenue Act of 1928, to a deduction of the sum of $8,243 as interest paid. This section authorizes the deduction from gross income of " all interest paid or accrued within the taxable year on indebtedness except " (exceptions not here important).

Petitioner contends that by giving a new note he paid the old note and the interest thereon. He argues that, if he had gone to a bank or a third party, borrowed the sum of *$120,643* (*$112,400 plus $8,243*) and had paid his creditor, no question could be raised as to its deductibility. We need not determine the correctness of that contention. We are not concerned with what *might* have happened, nor need we decide whether, under a different set of circumstances, some other conclusion would be reached. We are concerned with the sole question of whether this taxpayer, on a cash basis, being indebted for principal and accrued interest on a promissory note, having negotiated another loan from his creditor for an amount sufficient to cover the principal and accrued interest on the first loan, is entitled to deduct the amount of interest so adjusted, as interest *paid*.

Petitioner apparently is not confused by the use of the word " accrued " in the revenue act. He recognizes that under the construction which has consistently been followed, interest " accrued " can only be deducted when the taxpayer is making his return on an accrual basis, as distinguished from a cash receipts and disbursements basis. Nothing more need be said on this feature.

It is well settled that deductions are only allowed as provided by statute and in order to secure them the taxpayer must bring himself clearly within the terms of the statute. *New Colonial Ice Co.* v. *Commissioner*, 292 U. S. 435; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301; *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, 326; *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62, 66. Petitioner has not done so. We have held, under similar situations, that taxpayers on the cash receipts and disbursements basis may only deduct from their gross income in the taxable year, interest *actually paid* in that year. *Utah Orpheum Co.*, 3 B. T. A. 1041; *Francis R. Hart*, 21 B. T. A. 1001.

In *Hart* v. *Commissioner*, 54 Fed. (2d) 848, affirming our decision, the Circuit Court of Appeals for the First Circuit, after referring to *United States* v. *Mitchell*, 271 U. S. 9, said:

From this decision of the Supreme Court, we reach the conclusion that the word " paid," as used in the statute refers to cash payments during the taxing year if the taxpayer's books are kept upon the cash receipts and disbursements basis, and that the word " accrued " has reference to books or accounts from which returns are made upon the accrual basis.

It is inconsistent with the cash receipts and disbursements method of accounting that the petitioner be permitted to claim a deduction where there has been no actual payment of cash. This basis of accounting requires that he report only actual receipts and deduct only actual disbursements.

The fact that the American Trust Company stamped the bill for interest "paid" and entered the amount of the petitioner's note as a credit to interest on its books of account does not establish a cash payment entitling the taxpayer to a deduction for interest paid where his return is on a cash basis. If the note is never paid, the taxpayer has parted with nothing more than his promise to pay. A promise to pay is not cash, and a deduction from [for] interest is permissible only in the taxable year in which the taxpayer pays cash. [Citing cases.]

The question at issue here is closely akin to that involved in *Blair* v. *First Trust & Savings Bank*, 39 Fed. (2d) 462, and *Helvering* v. *Martin-Stubblefield, Inc.*, 71 Fed. (2d) 944, in which the courts held that notes representing commissions received by the taxpayers need not be reported as income. In the latter case the court quoted with approval the language used in *Blair* v. *First Trust & Savings Bank*, *supra*, as follows:

It is plain that until the loan is paid or rediscounted the respondent has earned no profit, but has simply parted with its funds on the faith of the security. The commission is not actually received until respondent gets back what it has previously paid out plus the commission. The deduction of the commission from the face of the loan brings nothing into the coffers of the bank.

The taxpayers in the above cited cases did not receive the commissions when the notes were delivered to them. By a parity of reasoning, the petitioner in the instant case did not pay the item of interest in question when he gave his note therefor.

The case of *Robert B. Keenan*, 20 B. T. A. 498, is cited by petitioner, but we are unable to see that it has any applicability. In that case we held that the payment of expenses with borrowed money did not postpone the deduction of such amount from gross income until the year in which the borrowed money was repaid. The conclusion therein reached is not decisive of the question here under consideration.

In the instant proceeding petitioner substituted one promise to pay for another. In so doing, even though he extinguished his liability under the first note for principal and interest, he "paid" nothing in the sense in which this word is used in section 23 (b), *supra*. After giving the new note, he still owed his creditor the principal and interest due on the old one, and the only change was that his obligation to pay was represented by a new and different piece of paper, the effect of which was to postpone the date of payment. A promise to pay does not satisfy the provisions of the statute allowing a deduction for "interest paid." *Eckert* v. *Burnet*, 283 U. S. 140.

The case of *John C. Hermann*, 27 B. T. A. 409, in so far as it is contrary to the views herein expressed, is hereby overruled.

It follows, therefore, that petitioner was not entitled to deduct as interest paid, the sum in question.

Reviewed by the Board.

> *Judgment upon both issues will be entered in favor of the respondent.*

---

McMahon, dissenting on the second point: Bearing in mind that taxation is eminently practical, and looking through form to substance, which is vital and controlling, as we must do, in the final analysis we have presented in this proceeding a simple situation substantially and essentially as follows: Petitioner gave to a bank his promise in writing to later pay it money with interest thereon— a chose in action, property, an asset in the possession of the bank— and also collateral—property, an asset—securing the fulfillment of his promise, for all of which he received from the bank money or its equivalent. Such money so received thereupon became his money. Thus having the money, he used a portion of it, $8,243, to pay in cash or its equivalent interest which he owed the bank on a previous uncollateralized similar written promise to pay to the same bank a smaller amount with interest.

For all practical purposes, and in effect, the result is the same as if he had thus gotten the $8,243 in cash from a second bank and immediately carried it over and delivered it to the first bank in payment of such interest, or, immediately thus used it to pay interest which he owed to a third bank.

Obviously, if he had pursued either of the latter two courses the deduction of the interest would be allowable; and the same principle requires that the deduction for the interest in issue in this proceeding be allowed.

It may be added that in the instant proceeding the interest in question was, and in each of the other two assumed analagous situations would be, simultaneously and correspondingly income to the bank.

If there is anything in any of the precedents contrary to or in conflict with these conclusions, they, to that extent, should not be adhered to.

---

Leech, dissenting on the second point: The administration of the income taxing statutes is necessarily highly practical (*Tyler* v. *United States*, 281 U. S. 497) and, so far as reasonably possible, therefore, effect should be given to the customs and usages of busi-

ness. To one on a cash basis, these taxing acts unqualifiedly permit the deduction of certain specific items, including taxes, interest, and ordinary and necessary expenses of doing business, "paid" during the tax year. It would seem unquestioned that a taxpayer on such a basis, who owed taxes to A municipality, accrued interest at B bank, and ordinary and necessary expenses of his business to C, and who then borrowed funds at X bank on his promissory note, and paid these items, would be entitled to their deduction from his gross income in the determination of taxable income for the year in which they were paid. *Robert B. Keenan*, 20 B. T. A. 498. If the taxpayer has a loan at X bank, and, before an interest maturity date thereon, he borrows additional funds from that bank which are deposited in his account and then later, upon the maturity of the interest on the original loan, he pays that interest by a check on his own account at that bank, certainly that amount is deductible as interest paid. I disagree with the majority conclusion that the taxpayer is denied this statutory deduction for accrued interest merely because the loan is made from the creditor to whom the interest is due. Contrary to the premise of the majority opinion, the payor and payee of interest met by the giving of a note in such instance are not *in pari passu*, where the obligation of such interest is satisfied by a mere promise to pay, in the form of a promissory note, and the deductions summarily denied as in the case of *Hart* v. *Commissioner*, 54 Fed. (2d) 848, affirming 21 B. T. A. 1001. (Cited in the majority opinion.) The recipient of that note admittedly receives taxable income upon the sale or other disposition of that note. But that sale or other disposition by the payee does not entitle the promissor on the note to deduct any part of it as interest paid, since he has not yet paid it.

It seems that a logical and practical test here which will not only reconcile the so-called commission cases (*Blair* v. *First Trust & Savings Bank*, 39 Fed. (2d) 462, and *Helvering* v. *Martin-Stubblefield, Inc.*, 71 Fed. (2d) 944), but which will give the taxpayer the right which Congress specifically granted, without an absurd pyramiding of interest payments or unjustifiable postponement of absolute statutory deductions, and avoid a result which may well lead to the necessity of impracticable inquiry into the source of funds with which such unconditionally deductible items were paid, is that—such deductions for interest paid are allowable when made from funds arising from loans made in independent transactions from those upon which the interest paid has accrued, whether such loans be made from the same creditor to whom the interest is owed or another. I think the transaction disclosed in the case of *John C. Hermann*, 27 B. T. A. 409, was such an independent transaction. The facts in the pending

record, presenting the second issue, are even stronger to that effect since, not only was the second loan approximately double the amount of the first, but the second loan was collaterally secured while the first was not. In my judgment, the decision of the Board in the *Hermann* case upon the facts there presented was right, and controls the disposition of the second issue here.

TRAMMELL, ARUNDELL, VAN FOSSAN, AND MCMAHON agree with this dissent.