JACOB F. SCHOELLKOPF, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76377. Promulgated April 6, 1937.

*Ralph M. Andrews, Esq.*, and *Arthur E. Surdam, Esq.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

#### OPINION.

ARUNDELL: This proceeding involves a deficiency for the year 1931 in the amount of $10,369.08. It is alleged that the respondent erred

(1) in disallowing a loss to the extent of $101,351.70 claimed by the petitioner in the liquidation of a certain corporation and (2) in increasing income by an amount of $13,866.25 as a gain realized from an exchange of securities of a Maryland corporation for the securities of a New York corporation plus cash.

This proceeding, with the exception of four exhibits relating to the first issue, was presented upon a stipulation of facts.

The petitioner is a resident of Buffalo, New York.

(1) On or about November 7, 1928, the petitioner acquired at a cost of $30,551.51 ten shares and 1,520 bearer share warrants, entitling him on surrender thereof to 1,520 shares of the capital stock of Shellgrafton, Ltd., hereinafter referred to as Shellgrafton, a Canadian investment security holding corporation, located at Fort Erie, Ontario, having an authorized capital of 5,000 shares of a par value of $100 per share.

On October 9, 1931, the petitioner surrendered to Shellgrafton the bearer share warrants owned by him in exchange for 1,520 shares theretofore represented by the warrants.

On various dates from December 3, 1928, to October 22, 1930, Shellgrafton obtained loans from the Marine Trust Co., a banking corporation located in Buffalo, New York, hereinafter referred to as the bank, in varying amounts aggregating $600,000 on October 22, 1930. Shellgrafton gave the bank its demand notes to cover the loans. On that date all the assets of Shellgrafton, of a fair market value of $579,992.50, other than cash and accounts receivable not in excess of $35,000, were pledged with the bank to secure its demand notes. Such notes were not endorsed by the petitioner.

On the same date the petitioner and two other stockholders of Shellgrafton, each to the extent of one-third, were jointly indebted to the bank in an amount of $300,000 on an account carried by the bank in the name of "J. F. Schoellkopf, Jr. Special", hereinafter referred to as the special account, secured by certain securities having an aggregate fair market value on that date of $615,185.88, some of which were owned jointly in equal shares by the parties and some by each individually.

On the same date, at the request of the bank and upon its representation that the notes of Shellgrafton were insufficiently secured and to prevent a sale by the bank of the assets of Shellgrafton pledged as collateral for its notes, the petitioner caused to be written, with the consent and acquiescence of the other two stockholders, a letter to the bank in part as follows:

This letter will be authority for you to apply any excess collateral on the loan made to J. F. Schoellkopf, Jr., Special, toward any deficiency in the col-

lateral on the loan made by Shellgrafton Limited, this authority to continue until such time as it may be changed in writing.

No change was ever made in the above authority.

On various dates between October 22, 1930, and October 8, 1931, upon the insistence of the bank that the value of the collateral securing the notes in the special account and of Shellgrafton had greatly depreciated, the petitioner and the other stockholders deposited with the bank individually owned securities as additional collateral for such notes.

The indebtedness of Shellgrafton to the bank was reduced on January 7, 1931, by $5,000 to $595,000.

On October 8, 1931, pursuant to an agreement between the bank, petitioner, and the other two stockholders, the accounts in the bank of the petitioner and the other two stockholders were charged by the bank with an aggregate amount of $575,000, the account of the petitioner being charged with the amount of $221,111.65; the account of Shellgrafton in the bank was credited with an amount of $575,000. The bank marked the note of Shellgrafton paid and surrendered it to Shellgrafton, at the same time advising it by letter that its indebtedness to the bank of $575,000, and interest, had been fully paid and satisfied. Demand notes were given to the bank by the petitioner and the other stockholders for the amounts charged to their individual accounts. The note of the petitioner remained unpaid on December 31, 1931. At the time the account of Shellgrafton was credited with the amount of $575,000, an amount of $20,000 was charged to its cash deposit account in the bank by an entry of a charge slip, making a total credit of $595,000.

On the same date the petitioner wrote a letter to Shellgrafton as follows:

Your company is indebted to me in the sum of $221,041.50 and interest as I have assumed an indebtedness to The Marine Trust Company in that amount against which the Marine Trust Company has discharged you from the corresponding amount of your indebtedness to it. If it is agreeable to you I am prepared to accept in full settlement of your indebtedness the transfer to me or my nominees of the following shares. Please advise me of your decision at your early convenience.

77 Shares American Home Products Com.
8 Shares Copeland Products Com. A.
39 Shares Consolidated Gas (N. Y.) Com.
1730 Shares Eastern States Power Com. B.
77 Shares Hazeltine Products Com.
500 Shares Marine Midland Cap.
17444 Shares Niagara Share of Md. Com.
193 Shares Taggart Com.

Similar letters were written by the other stockholders. Pursuant to such letters, all the securities deposited by Shellgrafton with the

bank as collateral for its loans to Shellgrafton, constituting all of the remaining assets of the latter, were, subject to their indebtedness to the bank, distributed to them in proportion to the amounts of the demand notes given by each of them to the bank. The petitioner's share of such securities had a fair market value of $120,369.11. On December 31, 1931, Shellgrafton was dissolved.

In his income tax return for the year 1931, made on a cash receipts and disbursement basis, the petitioner claimed a loss of $131,903.21 as a result of the liquidation and dissolution of Shellgrafton, computed as follows:

| | |
|---|---:|
| Cost of stock | $30,551.51 |
| Note to Marine Trust Co. of Buffalo of Oct. 8, 1931 [1] | 221,720.81 |
| Total | 252,272.32 |
| Assets received | 120,369.11 |
| Loss claimed | 131,903.21 |

The respondent allowed the claimed loss only to the extent of the cost of the stock, or $30,551.51, and disallowed the balance of $101,351.70.

The petitioner contends on brief that he is entitled to an additional loss deduction in the amount of $100,742.54 upon the ground that the payment or discharge of the indebtedness of Shellgrafton to the bank constituted a capital contribution to that company and hence increased the cost of his stock. The amount claimed is the difference between the amount of his note,[1] $221,111.65, and the $120,369.11 value of the securities received in 1931.

Section 41 of the Revenue Act of 1928 provides that the net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. The petitioner herein employed the cash receipts and disbursements basis.

In *Hart* v. *Commissioner*, 54 Fed. (2d) 848, affirming *Francis R. Hart*, 21 B. T. A. 1001, the court stated:

> It is inconsistent with the cash receipts and disbursement method of accounting that the petitioner be permitted to claim a deduction where there has been no actual payment of cash. This basis of accounting requires that he report only actual receipts and deduct only actual disbursements.

It has been held that the amount of a note given by a stockholder, on a cash receipts and disbursement basis, in settlement of his liability as an endorser on the corporation's notes is not deductible from gross income, no cash having been paid on the note in the taxable year. *A. James Eckert*, 17 B. T. A. 263; affd., *Eckert* v. *Commissioner*, 42 Fed. (2d) 158; affd., *Eckert* v. *Commissioner*, 283

---

[1] Discrepancy as to amount of this note not explained.

U. S. 140. In that case, as in the instant proceeding, the taxpayer gave his note in discharge of corporate notes, and, in both, the corporations were dissolved in the year that the individual notes were given in discharge of the corporate notes. The petitioner herein, however, was not an endorser of the notes of Shellgrafton. Whether the giving of a note by a stockholder in discharge of corporate indebtedness is founded on liability as endorser, as in the *Eckert* case, or is a voluntary assumption by the stockholder of corporate indebtedness, is not decisive of the question herein. If no loss was sustained under the circumstances in the *Eckert* case, it is hard to see why the conclusion should be otherwise here. In neither case did the taxpayer pay out any cash; he merely agreed to pay an indebtedness at some future time. Cases cited by the petitioner are to the effect that the assumption, payment, or cancellation by a stockholder of corporate indebtedness constitutes a capital contribution and serves to increase the cost of the shares to the stockholder. See *Menihan* v. *Commissioner*, 79 Fed. (2d) 304; certiorari denied, 296 U. S. 651; *Park* v. *Commissioner*, 58 Fed. (2d) 965; *Kistler* v. *Commissioner*, 58 Fed. (2d) 687; *Burns* v. *Commissioner*, 31 Fed. (2d) 399; *W. F. Bavinger*, 22 B. T. A. 1239; *B. Estes Vaughan*, 17 B. T. A. 620. But what was said in those cases must be taken in connection with the fact situation in each case. The petitioner here did not assume the debts of Shellgrafton as a part of the plan to save his investment in the corporation. The debt was assumed in connection with the liquidation and dissolution of Shellgrafton, and it may not be said that the petitioner has presently suffered a loss until the note given by him is paid. It may well be that the securities received from Shellgrafton and held as collateral by the bank may so appreciate in value that the petitioner in fact may never be out of pocket. We think the principle of the *Eckert* case is controlling. It follows that the respondent correctly disallowed the claimed deduction in excess of the amount of $30,551.51 representing the cost of the stock.

(2) The remaining issue involves the exchange by the petitioner of shares of stock of the General Baking Corporation, a Maryland corporation, for stock and bonds of a New York corporation of the same name, plus cash in the amount of $791.25. The question here is the same as that in *H. B. Leary, Sr.*, 34 B. T. A. 1206, which grew out of the same transaction. Following our decision in that case, we hold here that the exchange of securities was nontaxable under the reorganization provisions of the Revenue Act of 1928, and that the cash dividend of $750 received by the petitioner and reported in income was an ordinary dividend.

*Decision will be entered under Rule 50.*