T. HARVEY FERRIS AND ELIZABETH B. FERRIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88214. Promulgated August 11, 1938.

*Henry T. Dorrance, Esq., D. H. Blair, Esq., J. G. Korner, Jr., Esq.,* and *George D. Brabson, Esq.,* for the petitioners.

*W. W. Kerr, Esq.,* for the respondent.

**OPINION.**

OPPER: Although the deduction sought by petitioner was claimed on his original return as a bad debt,[1] and although on oral argument petitioner's counsel took the position that he was not required to and would not elect whether to make the claim on that ground or as a loss not compensated for, it now appears that the sole contention made on behalf of petitioner is that the deduction is allowable as a loss. The only statutory provision cited in petitioner's brief as being applicable is section 23 (e) of the Revenue Act of 1934,[2] dealing with losses. Since, however, in our opinion the same result would follow on either theory upon the facts before us, it matters little which claim is urged.

This proceeding must, it seems to us, be disposed of upon the authority of *Eckert* v. *Burnet*, 283 U. S. 140. Petitioner seeks to avoid the controlling effect of that decision on two grounds, the first one being that the Court there treated the taxpayer's claim as a bad debt and failed to pass upon it as a deductible loss.

It may be assumed—in spite of petitioner's earlier position that it is the duty of the Board and the courts to determine cases on whatever theory is applicable, and to grant relief to a taxpayer if he be entitled to it on any appropriate ground—that it would be possible for the Supreme Court to disregard one principle favorable to the taxpayer and decide against him on another. Such an implication should, if at all, be sparingly resorted to, and particularly since both grounds were considered in the course of the proceedings. *Eckert* v. *Commissioner*, 42 Fed. (2d) 158. But be that as it may, the opinion itself is here sufficient to controvert such an assumption. Mr. Justice Holmes, speaking for the unanimous Court, after disposing of the bad debt contention, says (p. 141): "The petitioner treats the case as one of an investment that later turns out to be bad. * * * We do not perceive that the case is bettered by the fact that some of the

---

[1] The stipulation recites that it was taken as a loss, but we have refused to find this as a fact since the return, which is in evidence, shows the contrary.

[2] SEC. 23. (e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

   *        *        *        *        *        *        *

original notes years before were given for property turned over to the corporation by the partnership that formed it. *For the purpose of a return upon a cash basis, there was no loss in 1925.*" (Emphasis added.) And in *Frank Kuhn,* 34 B. T. A. 274, 275, we referred to "the rule of *Eckert* v. *Burnet,* 283 U. S. 138, [*sic*] and other cases, that a taxpayer on the cash basis may not deduct, *either as a sustained loss or a debt ascertained to be worthless,* the amount of a note made by him as primary obligor in substitution for a note given by another upon which the taxpayer had theretofore been a secondary obligor, until he pays on the note * * *." (Emphasis added.)

Petitioner's position seems in reality to be based upon a failure properly to analyze his contention. If his position be that an investment made many years before has turned out to be worthless and he has thereby suffered a loss, it would follow that the deduction could be allowed only in the year when the investment became valueless. Regulations 86, art. 43–2. *Dixie Groves & Cattle Co.,* 5 B. T. A 1274; *Charles M. Monroe Stationery Co.,* 15 B. T. A. 1227; *Chickasha Cotton Oil Co.,* 18 B. T. A. 1144. Here there is no evidence of any investment, or whether or when it became worthless; and we may not assume that whatever loss there was did not occur long prior to 1934. That being the case, the only ground upon which petitioner could urge a postponement of the year of deduction would be that he had never paid for his investment and, being on the cash basis, he should be permitted to deduct the investment loss in the year when he paid it. It may be said in passing that this appears to be contrary to the view expressed in the very cases upon which petitioner relies, since there the deduction was permitted not because or in spite of the fact that the investment was paid for, but because in the year involved the investment became worthless. *Crain* v. *Commissioner,* 75 Fed. (2d) 962; *A. W. D. Weis,* 13 B. T. A. 1284; see also *Burns Mfg. Co.* v. *Commissioner,* 59 Fed. (2d) 504, 506. Cf. *Morris Sass,* 17 B. T. A. 261. But in any event, if petitioner contends that his failure to pay for the investment justifies postponement of the deduction, it being clear that this is due to the fact that his investment was represented by his accrued but unpaid liability as an endorser on Guibord's note, then the same result must follow when there is substituted for that liability another, also accrued but unpaid. That being so, no distinction from the *Eckert* case could be supported even if the decision there related solely to a bad debt, for that case clearly holds that a liability is not "paid" by a taxpayer on the cash basis by the mere substitution of another liability to the same creditor. The principle would appear self-evident even in the absence of that decision.[3] It follows that even

[3] Section 43, Revenue Act of 1934, provides: "The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed * * *."

on petitioner's theory the deduction if treated as a loss could be taken only in some previous year when the loss was ascertained or in some subsequent year when the accrued liability representing his investment was paid in cash, unless the substitution of petitioner's personal obligation for the one upon which he was liable as an endorser is, on the facts in this proceeding, such an "identifiable event", so equivalent to payment in cash, that the year of that substitution may become the year of deduction. This brings us to a consideration of petitioner's second contention.

The remaining ground advanced by petitioner for distinguishing the *Eckert* case is that here petitioner gave his creditor a check drawn on an account augmented by the proceeds of a new note from petitioner to the creditor, whereas there the old obligation was directly exchanged for a new one. Perhaps recognizing that this distinction in fact will not advance his contention unless he also demonstrates a difference in principle, petitioner goes on to contend that the procedure adopted here resulted in a complete destruction of the original obligation and of any rights of the creditor under it, and a complete relegation of the creditor to recourse upon the new liability, with the clear result that as between the parties the original obligation must be regarded as "paid." The difficulty is that, conceding everything that has been said, no distinction follows; for it is clear that no such narrow ground was the basis of the decision in the *Eckert* case. There "the petitioner * * * received the old notes, marked paid, and destroyed them." If the Court had been of the opinion that it was of any materiality whether this was sufficient prima facie proof of payment as between the parties, it is inconceivable that some discussion of the point would not appear. See Uniform Negotiable Instruments Act, sec. 119. We did not regard the distinction as controlling in *S. E. Thomason*, 33 B. T. A. 576, for there we said (p. 585): "* * * petitioner substituted one promise to pay for another. In so doing, *even though he extinguished his liability under the first note* for principal and interest, he 'paid' nothing in the sense in which this word is used in section 23 (b), *supra*." (Emphasis added.) The important consideration is that, in dealing with the distinction under the revenue acts between accounting systems on the cash and accrual bases, rules of general law dealing with results as between the parties are of little benefit. See, e. g., *Schlemmer* v. *United States*, 94 Fed. (2d) 77. It seems to us that the doctrine of the *Eckert* case, and others dealing with similar questions, is that the substitution of one obligation for another, at least when the parties are the same, is not payment for tax purposes, regardless of its effect as between the parties. *Frank Kuhn, supra; Morris Sass*, 12 B. T. A. 156; *Edmond A. Hughes*, 27 B. T. A. 1022, 1027; see *Jacob F. Schoellkopf, Jr.*, 35 B. T. A. 855.

Petitioner relies heavily upon *Jenkins* v. *Smith*, 21 Fed. Supp. 433. There, as appears from the facts stated by the court, the taxpayer's decedent had "entered into a bond agreement with the other directors and the bank" (Merchants National Bank of New Haven). The funds used to discharge this obligation were borrowed from the First National Bank & Trust Co., to which new collateral was given. The court said this "was a new contract of a substantially different nature." Without being required to determine whether upon such facts this Board would reach a similar conclusion, it is now sufficient to point out the distinction from the facts in the present proceeding, and to add that if the *Jenkins* case stands for any doctrine beyond that indicated we believe it to be inconsistent with *Eckert* v. *Burnet, supra,* and must respectfully decline to regard it as controlling.

As was said in *S. E. Thomason, supra,* "Petitioner * * * argues that, if he had gone to a * * * third party, borrowed the sum * * * and had paid his creditor, no question could be raised as to its deductibility. We need not determine the correctness of that contention. We are not concerned with what *might* have happened, nor need we decide whether, under a different set of circumstances, some other conclusion would be reached." Here the second borrowing was for the express purpose, and on the specific condition, of a repayment of the first. The intermediate step of crediting petitioner's account and checking against it was inconsequential and immaterial. Neither cash, nor the transfer of credit, nor their equivalent actually passed between the parties. We conclude that, on the facts here present, petitioner did not, within the meaning of the revenue act, "pay" the liability represented by the first note and is not entitled to deduct the amount thereof either as a bad debt or as a loss.

*Decision will be entered for the respondent.*