SAM C. AND PATRICIA L. EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 1807-72
United States Tax Court
T.C. Memo 1975-181; 1975 Tax Ct. Memo LEXIS 194; 34 T.C.M. (CCH) 783; T.C.M. (RIA) 750181; June 9, 1975, Filed Wentworth T. Durant and Robert Don Collier, for the petitioners. Robert M. Smith, for the respondent. STERRETT
SUPPLEMENTAL MEMORANDUM OPINION STERRETT, Judge: Pursuant to the Memorandum Findings of Fact and *195 Opinion [T.C. Memo. 1974-267] filed herein on October 15, 1974, petitioners, on January 21, 1975, filed a Computation for Entry of Decision in conformity with Rule 155, Tax Court Rules of Practice and Procedure. A copy of petitioners' computation was thereupon served on respondent. After the granting of a continuance of a hearing on petitioners' computation from February 26, 1975 to April 2, 1975, respondent, on March 20, 1975, filed his Computation for Entry of Decision along with his objections to petitioners' computation. After an informal meeting in chambers on April 2, 1975 in which the parties' conflicting computations were discussed, the Court ordered the parties to file memoranda of law supporting their positions with respect to the amount of any loss to which petitioners were entitled in 1969 as the result of a personal note of Sam C. Evans in the amount of $160,016 given by him to the National Bank of Commerce (hereinafter referred to as the bank) to retire a note in a similar amount of Sam C. Evans, Inc. On May 2, 1975, respondent filed the requested Memorandum of Law along with a new Computation for Entry of Decision which reflected a concession by respondent that petitioners *196 are entitled to a deduction in 1969 of $25,000 as a long-term capital loss resulting from the worthlessness of the stock of Sam C. Evans, Inc. On May 5, 1975, petitioners filed their requested Memorandum of Law and an amended Computation for Entry of Decision. Subsequently, on May 12, 1975, petitioners filed a document entitled "Objection to Respondent's Computation under Rule 155" in which they reiterated their position taken in their Memorandum of Law and further objected to respondent's omission of payments totaling $14,323.91 made by Sam C. Evans in 1969 on behalf of Sam C. Evans, Inc. from his computation regarding the deduction for the loss from worthless stock of Sam C. Evans, Inc. One of the issues presented to this Court by the parties in the above-entitled proceeding through the Notice of Deficiency and the pleadings was whether petitioners were entitled to deduct in 1969 depreciation on a Lear jet, interest paid on a loan, which petitioner Sam C. Evans guaranteed, from Texas Western Financial Corporation to finance the purchase of that aircraft, and the loss incurred on the subsequent sale of the aircraft. In their pleadings and on brief petitioners framed their basis *197 for their claim to these deductions solely on the grounds that petitioner Sam C. Evans owned and used the aircraft and took out the loan individually in conducting a trade or business. Resolution of petitioners' claim to the deductibility of these items turned solely upon the question of whether petitioner Sam C. Evans individually or Sam C. Evans, Inc. owned and operated the aircraft and took out the loan from Texas Western Financial Corporation. We held that Sam C. Evans, Inc. was a viable corporation for federal income tax purposes, that it owned and operated the aircraft, and that it was the one to whom the loan was made. Consequently we denied petitioners' claims to the above-mentioned items. After the filing of our Memorandum Findings of Fact and Opinion in this case, petitioners, on November 8, 1974, moved for us to reconsider. Specifically, among other things, petitioners then claimed alternative deductions of $25,000, $160,016 and $14,323.91 relating to the above-discussed issue under different Code sections than those originally presented by the parties and considered in our opinion. Such requests for consideration of alternative deductions were denied in a Memorandum Sur *198 Order dated December 26, 1974 on the ground that they were untimely raised. The basis for these denials was that since additional facts would be required to justify these claimed alternative deductions, our consideration of them at that late date would be prejudicial to respondent. Now, however, the parties have reached agreement with respect to one essential fact involved, thus leaving us in a position, we believe, to consider the claimed alternative deductions on the basis of the evidence contained in the record as it stands now. While there may be some facts not in the record which would be helpful to petitioners in supporting their claimed alternative deductions, we do not consider the Rule 155 computation a proper place in which to retry the case. Consequently, we shall consider any such lack of evidence as being unfavorable to petitioners' position. After agreement of the parties, by order dated April 2, 1975, we included the following statement, which we think essential to our consideration herein of petitioners' claimed alternative deductions, in our Findings of Fact: "When Sam C. Evans, Inc. sold the aircraft, its sole asset, it received nothing other than the discharge *199 of its obligation to Texas Western." From this fact and other evidence contained in the record we conclude that any stock of or debt owed by Sam C. Evans, Inc. was wholly worthless at least immediately after the sale of the aircraft on or about December 4, 1969. The respondent concedes that petitioners are entitled to a deduction in 1969 of $25,000 as a long-term capital loss from worthless stock. The parties are in agreement that $25,000 was paid by Sam C. Evans as a down payment for the aircraft and that the $25,000 is a contribution to the capital of Sam C. Evans, Inc. By the same token, we think the $5,988.91 in interest and $8,335 in principal paid in August, 1969 by Sam C. Evans to Texas Western on behalf of Sam C. Evans, Inc. was intended to be, and did in fact constitute, a contribution to the capital of the latter corporation. Consequently, petitioners are also entitled to a deduction for this capital loss of $14,323.91 incurred when the stock of Sam C. Evans, Inc. became worthless in 1969. As for the claimed $160,016 loss the parties have narrowed their dispute as to the possible grounds for the deduction in 1969 down to two. These are: (1) whether the $160,016 represents *200 a contribution to the capital of Sam C. Evans, Inc. which gives rise to a loss from the worthlessness of stock deductible in 1969 under section 165(g); and (2) whether the $160,016 represents the payment of a guaranty of Sam C. Evans, Inc.'s note of the same amount by Sam C. Evans which gives rise to a bad debt deductible in 1969 under section 166(d). The respondent contends that, on or about October 17, 1969 when Sam C. Evans gave his personal note to the bank the proceeds of which were used to retire a note of Sam C. Evans, Inc. in a similar amount that was guaranteed by Evans, the circumstances at that time indicate that such transaction was not a contribution to capital. Petitioners, on the other hand, assert that the retirement of Sam C. Evans, Inc.'s $160,016 note in October, 1969 relates back to a contribution to capital made by Sam C. Evans in June, 1969 and thus should be treated as a contribution to capital in October, 1969. Petitioners construe the facts of the instant case to show that Sam C. Evans purchased an aircraft in June and then contributed that aircraft to Sam C. Evans, Inc. also in June. Petitioners also contend that, under Texas law, Sam C. Evans was always *201 personally liable on the loan used to purchase the aircraft and that thus his retirement of Sam C. Evans, Inc.'s $160,016 note (part of the refinancing of the original loan used to purchase the aircraft) relates to his contribution to capital and should be treated as such. Assuming petitioners' analysis of the facts to be correct, we do not believe their application of the principles of taxation involved to them to be correct. The record in this case shows that the aircraft was subject to a mortgage of $860,016 in favor of the bank and a note in that amount was issued in the name of Sam C. Evans, Inc. to the bank in June. Subsequently, in early July, Texas Western took out $700,000 of the loan made by the bank and was then given a security interest in the aircraft to the exclusion of the bank. Also at that time, Sam C. Evans, Inc. issued a new note to the bank for $160,016 which we believe was guaranteed by Sam C. Evans. Petitioners assert that what the whole transaction boils down to is the purchase of an asset (the aircraft by Sam C. Evans) with borrowed money and the contribution of that asset to a corporation, the stock of which subsequently became worthless. Thus, petitioners *202 argue, Sam C. Evans' obligation on Sam C. Evans, Inc.'s $160,016 note orginated from the initial loan by the bank used to purchase an asset contributed to Sam C. Evans, Inc. Petitioners then assert that the case law provides that "[when] money is borrowed from a third party and invested in a business or in assets contributed to a business, the loss on the worthlessness of the business is sustained at the time the business becomes worthless * * * [and that] the time of repayment of the borrowed funds is immaterial." However, the cases cited by petitioners do not support this asserted principle of law. Rather, they stand only for the principle that where funds borrowed from a third party are used to purchase stock, a loss from the worthlessness of the purchased stock is deductible in the year of worthlessness of the stock and not in the year of payment of the loan. See, e.g.,J. J. Larkin,46 B.T.A. 213 (1942); A.W.D. Weis,13 B.T.A. 1284 (1928). Clearly, that situation is not involved here. Under petitioners' analysis of the facts of the case, it would appear that the aircraft was contributed to Sam C. Evans, Inc. subject to a mortgage. Consequently, *203 Sam C. Evans' basis in his stock would not include the amount of the mortgage. Section 358(a)(1) and (d). We think the tax consequences of the retirement of Sam C. Evans, Inc.'s $160,016 note in October are to be determined in the instant case by consideration of whether Evans intended to enlarge his stock investment in the corporation when he gave the bank his personal note or whether he paid only because legally obligated to do so and without a desire to invest more capital. See Daniel Gimbel,36 B.T.A. 539, 542 (1937). Considering the circumstances surrounding the retirement of Sam C. Evans, Inc.'s $160,016 note, especially its proximity in time to the practical demise of the corporation (sometime in November, 1969), and remembering that we have decided that any absence of pertinent evidence on any issue herein shall bear against petitioners, we hold that the transaction in question did not give rise to a contribution to capital. Sam C. Evans' act in issuing his own note in exchange (at least in reality) for the corporate note that he had guaranteed was surely an involuntary act, not an act intended to create additional capital for the corporation. We agree *204 with respondent that the transaction in question must be considered as creating a debtor-creditor relationship between Sam C. Evans and the corporation. This conclusion requires us to consider whether Sam C. Evans is entitled to a bad debt deduction under the circumstances of this case. We have already decided that any debt owed by Sam C. Evans, Inc. was without value at least immediately after the aircraft was sold on or about December 4, 1969. The crucial inquiry upon which resolution of the question now at hand turns is whether the circumstances involved show that a payment of Sam C. Evans, Inc.'s $160,016 note occurred. The respondent relies upon the principle stated in Eckert v. Burnet,283 U.S. 140 (1931) and Helvering v. Price,309 U.S. 409 (1940) that the issuing of a note by a cash basis taxpayer in order to satisfy a corporate liability which he has endorsed or guaranteed is not a payment until the note itself is paid. Petitioners attempt to distinguish those cases by asserting that there there were only substitutions of notes but that here the proceeds of Sam C. Evans' note were applied to retire the corporation's note. On the evidence *205 contained in the record, we do not find petitioners' distinction meaningful. While we recognize that in some instances a taxpayer may borrow from his creditor in order to pay off another debt owed or a guaranty made to that same creditor, see G. Douglas Burck,63 T.C. 556 (1975), Thomas Watson,8 T.C. 569, 579 (1947), Newton A. Burgess,8 T.C. 47 (1947), such a situation has not been shown to be the case here. We think that the instant case must follow the result in Thomas Watson,supra at 578-79, and in T. Harvey Ferris,38 B.T.A. 312 (1938), affirmed per curiam 102 F. 2d 985 (2nd Cir. 1939), both of which we believe present facts more favorable to the taxpayers involved therein than do the facts of the instant case. We believe that Humphrey v. Commissioner,91 F. 2d 155 (9th Cir. 1937), cited as support by petitioners, can be interpreted to be consistent with our view that what is involved here is merely a substitution of notes rather than a valid loan and a payment of a guaranty. If it cannot, since appeal lies in the instant case to a different circuit, we respectfully *206 decline to follow it. The other cases cited by petitioners are not on point. Since Sam C. Evans did not pay off any part of his $160,016 note in 1969, no deduction under section 166(d) is allowable in 1969. An appropriate order will be entered.