WILLIAM M. ROBERTS AND JEAN ALBRECHT ROBERTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roberts v. Commissioner
Docket No. 21500-85.
United States Tax Court
T.C. Memo 1987-235; 1987 Tax Ct. Memo LEXIS 235; 53 T.C.M. (CCH) 787; T.C.M. (RIA) 87235; May 6, 1987. William M. Roberts, pro se. David R. Reid, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special *236 Trial Judge: This case was heard pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. [1]
Respondent has determined a deficiency in petitioners' Federal income taxes for 1980 and 1981 in the amount of $3,801.00 and $2,356.00, respectively. After concessions, the issues remaining for decision are: (1) whether petitioners are entitled to certain interest deductions under section 163 for amounts allegedly paid to a bank during taxable years 1980 and 1981, and (2) whether petitioners' income from a partnership should be decreased by reducing section 1231 gains in specified amounts pursuant to a closing agreement. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioners resided in Roberts, Illinois, when their petition was filed. *237 Before and during 1980, petitioners purchased an 80-acre farm and built a residence on that farm. Petitioners, cash basis taxpayers, obtained a number of loans from various individuals and financial institutions, including the Roberts State Bank (the Bank), to finance the farm and residence. On December 30, 1980, petitioners' balance in their joint checking account with the Bank was $75.48. A total of $10,674.04 in interest on three outstanding notes held by the Bank was due on December 31, 1980. On December 31, 1980, petitioners borrowed $10,674.04 from the Bank as evidenced by a note and this amount was deposited in petitioners' checking account with the Bank. On the same day, petitioners issued a check in the identical amount of $10,674.04 to the Bank as payment for interest expenses due for 1980 on three outstanding notes. [2] No other deposits were made to petitioners' checking account on December 31, 1980. Petitioners did not repay the $10,674.04 loan to the Bank in 1980. On April 21, 1981, petitioners *238 issued a $7,574.04 check to the Bank with a notation that it was to be applied against the December 31, 1980 note. On November 16, 1981, petitioners executed a mortgage and borrowed $122,000.00 from the Bank. At this time and for several days thereafter petitioners' checking account was in an overdrawn status. On November 17, 1981, the Bank made a number of credit and debit transactions with respect to petitioners. The Bank applied $13,301.12 of the $122,000.00 loan proceeds as payment of interest expenses due during 1981 on certain prior notes. The petitioners did not repay the $122,000.00 loan during 1981. On their 1980 return, petitioners included in their interest expense deduction the December 31, 1980 payment of $10,674.04. Respondent disallowed the deduction of this $10,674.04 on the basis that this amount was an increase in petitioners' loan balance and was not interest paid in 1980 to the Bank. This disallowance was reduced to $10,474.04 as a result of a computational error made by petitioners on their return. On their 1981 return, petitioners included in their interest expense deduction the $13,301.12 applied as payment of interest on November 17, 1981. Respondent *239 disallowed the $13,301.12 on the grounds that this was added to petitioners' new loan and not interest paid in 1981. Respondent disallowed another $348.00 amount included in petitioners' interest expense deduction as unsubstantiated. Respondent allowed a deduction for the April 21, 1981, $7,574.04 check on the basis that this paid part of the interest previously disallowed for 1980. This left a net interest expense adjustment of $6,075.08 for 1981. At trial, petitioners alleged that they were entitled to an additional deduction of $215.12 for interest paid to the Bank in 1981. Petitioners did not claim this amount on their 1981 return. Petitioners, through the Bruce L. Mandell partnership, were limited partners with a .005866 interest in Alberta Coal Properties, Ltd. (the partnership), during 1976, as well as the years in question, 1980 and 1981. The partnership was examined by the Internal Revenue Service. As a result, a notice of deficiency for 1976 was issued to petitioners. Petitioners filed a petition with this Court for 1976. Roberts v. Commissioner, docket No. 12357-80. In 1980 and 1981, the partnership had income in the form of coal royalties which, after *240 appropriate deductions, resulted in gains reportable as long-term capital gains under section 1231 (section 1231 gains). Petitioners received allocations of the partnership's section 1231 gains based on their exact percentage ownership of the partnership in the amounts of $3,205.00 and $2,848.00 for 1980 and 1981, respectively. [3]
Petitioners timely filed their Federal income tax returns for 1980 and 1981. Petitioners' original 1980 return did not include any income or loss from the partnership. On August 8, 1983, petitioners filed an amended Federal income tax return for 1980 and reported additional income from the partnership Schedule K-1 of $30.00 of ordinary income and the $3,205.00 of section 1231 gains. Petitioners claimed the 60% long-term capital gains deduction of $1,923.00 to reach net taxed capital gain of $1,282.00, which added to the $30.00 totaled $1,312.00 in additional taxable income for 1980. On their 1981 return, petitioners reported the $2,848.00 of section 1231 gains from the partnership. Petitioners claimed the 60% long-term capital gains deduction of $1,709.00 *241 to reach net taxed capital gains of $1,139.00. On November 3, 1983, the parties settled Roberts v. Commissioner, docket No. 12357-80, pursuant to a Closing Agreement On Final Determination Covering Specific Matters. The purpose of the Closing Agreement was to determine the treatment, for Federal income tax purposes, of petitioners' share of any item of income, gain, loss deduction, credit and/or other distribution from their interest in the partnership for 1976 and subsequent taxable years. The Closing Agreement allowed petitioners an ordinary deduction of their actual cash investment in the partnership and further provided in relevant part that: 2. The taxpayer's allocable share of any partnership income attributable to the repayment of the partnership's non-recourse liabilities in any year (income deemed to be received by the partnership and paid by or on behalf of the partnership toward the principal and interest on such liabilities) shall not be includible in income. The taxpayer's allocable share of any partnership expense attributable to the repayment of the partnership's non-recourse liabilities (e.g., interest on the non-recourse note) similarly shall not be deductible. *242 3. If any such income was reported by the taxpayer in any year, then the taxpayer shall be allowed a deduction equal to the amount of such income reported reduced, however, by the amount of any interest expense claimed and allowed which is attributable to the non-recourse note. In the course of the settlement proceedings, counsel for the partnership had issued a report dated March 31, 1983, to the petitioners and other limited partners stating that amounts which were included in the partnership income but which were actually applied to principal and interest on the partnership's non-recourse note were "to be adjusted out." The report set forth net adjustments of $427,016.00 and $296,641.00 for 1980 and 1981, respectively. Those adjustments were based on the application of the partnership's gross coal royalties against the non-recourse note and interest, as reduced by interest deductions. In the report, counsel advised that the partnership percentage be applied to the net adjustments to determine the amount of the reduction in income for 1980 and 1981 to which petitioners might be entitled. On or about August 10, 1984, petitioners filed a second amended return for 1980 and *243 claimed a $2,519.00 reduction in taxable income under the Closing Agreement. On or about April 10, 1984, petitioners filed an amended return for 1981 and claimed a $1,750.00 reduction in taxable income under the Closing Agreement. Petitioners computed these reductions in income by rounding-up their partnership percentage ownership from .005866 to .0059 and applying the rounded-up percentage to the total net adjustments in the March 31, 1983 reports to reach $2,519.00 (.0059 X $427,016.00) and $1,750.00 (.0059 X $296,641.00) for 1980 and 1981, respectively. Respondent determined that petitioners incorrectly computed and improperly claimed their allocable share of the reductions in income under the Closing Agreement from the partnership for 1980 and 1981. For 1980, respondent allowed petitioners a reduction in income of $2,505.00 [4] against the partnership section 1231 gains of $3,205.00 reported by petitioners on their amended return. For 1981, respondent allowed petitioners a reduction in income of $1,740.00 [5] against the partnership section 1231 gains of $2,848.00 reported by petitioners on their 1981 return. From the remaining amounts respondent deducted the 60% capital gains *244 deduction in each year and compared the corrected taxed capital gains to the greater taxed capital gains previously reported by petitioners. As a result, respondent determined that petitioners were entitled to decreases in income of $1,002.00 and $696.00 for 1980 and 1981, respectively. OPINION I. Interest "Payments" For cash basis taxpayers, section 163(a)[6] generally permits a deduction only for interest "paid" within the taxable year. It is well established in the Seventh Circuit, to which an appeal in this case would lie, and in this Court that the payment required to secure a deduction is the payment of cash or its equivalent; the giving *245 of the taxpayer's note is not the equivalent of cash, but only a promise to pay. Similarly, interest withheld by a lender from loan proceeds is not fully deductible in the year the interest is withheld. Cleaver v. Commissioner,158 F.2d 342 (7th Cir. 1946), affg. 6 T.C. 452 (1946); Nat Harrison Associates v. Commissioner,42 T.C. 601 (1964). Likewise, interest debited by a lender to a taxpayer's loan account is not fully deductible in the year of the debit. Heyman v. Commissioner,70 T.C. 482, 485 (1978), affd. without published opinion 633 F.2d 215 (6th Cir. 1980) and affd. 652 F.2d 598 (6th Cir. 1980). The theory is that there is no distinction between a taxpayer giving a promissory note, having the interest withheld from the loan proceeds, and having the interest debited to the loan account. Franklin v. Commissioner,77 T.C. 173, 183 (1981), revd. on a different issue 683 F.2d 125 (5th Cir. 1982); Rubnitz v. Commissioner,67 T.C. 621 (1977). *246 In contrast, interest paid to one lender by a cash basis taxpayer with funds borrowed from a separate lender is deductible when the interest is paid, not in the later year when the loan from the second lender is repaid. Perry v. Commissioner,28 B.T.A. 497 (1933); see Franklin v. Commissioner,supra. A disparity of result therefore arises among cases where the economic impact is similar. Nevertheless, this Court observed in Franklin v. Commissioner,supra, that we must proceed on the basis that the taxpayer ordinarily will be bound by the tax consequences of the form he has chosen. In Menz v. Commissioner,80 T.C. 1174, 1186-1187 (1983), this Court stated that the deduction is denied: where a taxpayer maintains a bank account at the bank where the loan was obtained, the bank credits the account with the loan proceeds and then immediately charges the account for the interest due (or similarly, the payor simply delivers a check drawn on that account). Watson v. Commissioner,8 T.C. 569, 578-579 (1947); *247 Ferris v. Commissioner,38 B.T.A. 312, 316-317 (1938), affd. per curiam 102 F.2d 985 (2d Cir. 1939). See Rubnitz v. Commissioner,supra;Blitzer v. United States, 231 Ct. Cl. [236], 684 F.2d 874 (1982). In such cases a taxpayer would not be considered to have unrestricted control over the loan and since those principles cover the situations at issue here, we need not address the unrestricted control cases fully discussed in Menz v. Commissioner,supra,Noble v. Commissioner,79 T.C. 751 (1982); and Franklin v. Commissioner,supra.
On December 30, 1980, petitioners borrowed $10,674.04 from the Bank and immediately issued a check in that amount for interest. Contrary to petitioners' assertion, this $10,674.04 was not commingled with the funds deposited and withdrawn prior to December 30, 1980, nor was it commingled with petitioners' balance of $75.48. Petitioners simply substituted an obligation to the Bank for prior obligations to the Bank. Under well established authority, no interest was "paid" in 1980 in this transaction within the meaning *248 of section 163(a). In November 1981, when petitioners obtained a mortgage from the Bank, the loan proceeds were credited to the petitioners' account and the interest charges on prior obligations were charged against the account. As stated in Menz v. Commissioner,supra, this similarly is a situation where the deduction is to be denied under section 163(a). Petitioners alleged for the first time at trial that they are entitled to an additional interest deduction of $215.12 for interest paid to the Bank in 1981. Petitioners have the burden of proving that they are entitled to this deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners offered as evidence a $215.12 check dated December 22, 1981, payable to the Bank. This check, unlike other checks issued by petitioners to the Bank, did not bear a notation on its face that the check was in payment of interest. There is also no notation on the Bank's commercial loan ledger sheets of any interest paid by petitioners on or about December 22, 1981. Petitioners have not satisfied *249 us that the $215.12 check was related to any loan made by petitioners from the Bank. Accordingly, petitioners are not entitled to an additional interest expense deduction of $215.12. Similarly, petitioners have not shown that they are entitled to an interest deduction for $348.00 which respondent disallowed as unsubstantiated. For the aforesaid reasons, respondent's determinations as to interest expense deductions are sustained. II. Reductions in Income We must next determine whether petitioners correctly claimed reductions in income from the partnership for 1980 and 1981. Petitioners calculated their allocable share of reductions in income for 1980 and 1981 by rounding-up their percentage in the partnership from .005866 to .0059 and applying this percentage against total partnership net adjustments. Respondent determined that petitioners must apply their exact partnership percentage rather than a rounded-up percentage in calculating their allocable share of reductions in income. We agree, and observe that the exact percentage was used in determining petitioners' original reportable section 1231 gains for the two years. Respondent also determined that for 1980 and 1981 *250 petitioners incorrectly applied the reductions in income from the partnership to their taxable income. Respondent's position is that petitioners' reductions of income are to be applied to their share of the partnership section 1231 gains reported by petitioners. Again, we agree. Prior to petitioners' claims for reductions in income, the partnership had allocated to petitioners their share of net coal royalties as section 1231 gains for each of the taxable years. Petitioners reported those shares of section 1231 gains on their returns and claimed the 60% capital gains deduction under section 1202(a). The partnership's gross coal royalties were attributable to the repayment of the partnership non-recourse note and interest in the March 31, 1983 report. These gross coal royalties, after appropriate reductions, were the partnership's net coal royalties reportable as section 1231 gains. Petitioners had reported their allocable share of the partnership's section 1231 gains for both years in question and under the Closing Agreement were to be allowed a deduction of such income, as otherwise limited. In order "to adjust out" such income it was necessary to deduct the reductions in *251 income from the partnership section 1231 gains previously reported by petitioners. Petitioners' claim that the reductions in income should be from those amounts as reduced by the 60% capital gains deductions under section 1202(a), that is, taxable income, is simply unwarranted. Respondent correctly adjusted petitioners' capital gains income for 1980 and 1981. We sustain respondent's determinations on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years in question, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The use of the word "payment" in the findings of fact is for narrative convenience only and does not represent any factual conclusion, which is at issue here.↩
3. We find a one dollar discrepancy in the allocation for 1980 which we disregard as de minimis.↩
4. The difference between petitioners' calculations of the reduction of income ($2,519.00) and respondent's allowed amount ($2,505.00) for 1980 is attributable to rounding-up of petitioners' interest in the partnership. ↩
5. The difference between petitioners' calculation of the reduction of income ($1,750.00) and respondent's allowed amount ($1,740.00) for 1981 is attributable to rounding-up of petitioners' interest in the partnership.↩
6. SEC. 163. INTEREST. (a) GENERAL RULE -- There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩