ARTHUR A. BLUMEYER, III AND HOPE S. BLUMEYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blumeyer
Docket No. 23950-90
United States Tax Court
T.C. Memo 1992-647; 1992 Tax Ct. Memo LEXIS 681; 64 T.C.M. (CCH) 1249; November 5, 1992, Filed *681 Decision will be entered for respondent. For Petitioners: Alan J. Steinberg. For Respondent: Thomas C. Pliske. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $ 32,728.16. The issues for decision are: (1) Whether petitioners are allowed a deduction under section 166[1] for the payment of a loan obligation with the proceeds of another loan obligation from the same lender; and, if so, (2) whether petitioners are allowed a deduction under section 166 for tax year 1981 where petitioners had insufficient funds in their bank account and the payee did not present petitioners' check for payment until 1982, at which time the payee loaned petitioners the necessary amount of money. FINDINGS OF FACT Some of the facts *682 have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. Petitioners, husband and wife, resided in St. Louis, Missouri, at the time this petition was filed. Arthur A. Blumeyer III, hereinafter petitioner, was a shareholder in a retail insurance agency. Petitioners are cash basis taxpayers. They filed a return for the 1981 tax year reporting $ 76,000 as "other expenses" on their 1981 Form 1040, Schedule C. The character of this item as ordinary and necessary in petitioner's business is not in dispute. In 1974, petitioner became associated with A.U. Agency, Inc., d.b.a. Associated Underwriters, Inc. (hereinafter A/U), a Missouri corporation. Between the years 1978 and 1982, petitioner was a shareholder of A/U, a retail insurance agency doing business primarily in the St. Louis area. Because of the financial condition of the corporation, A/U's bank, North St. Louis Trust Co. (hereinafter NSLT), requested that the shareholders and their wives, including petitioners, guarantee a line of credit of $ 250,000 to the corporation. The line of credit became effective on September 18, 1978. Petitioners' *683 personal guarantee was secured by a second deed of trust on their residence at 281 Magna Carta Drive, in Creve Coeur, Missouri. In 1980, A/U was disbanded and the shareholders combined A/U with another agency to form a third agency named Insurance Brokers and Consultants. The line of credit with NSLT was drawn upon to cover a shortfall of approximately $ 200,000 discovered during the winding down of A/U. Because A/U was financially unable to pay off the line of credit, NSLT demanded payment by the guarantors, including petitioners, on December 8, 1981. In response to this written demand, petitioner wrote a check (#3391), dated December 20, 1981, to NSLT in the amount of $ 75,000 as payment of his portion of the personal guarantee. The check was given directly to George R. Schmick, vice president of NSLT. This check was drawn on petitioners' account with West Side National Bank (hereinafter West Side). At the time the check was written, petitioners had less than $ 6,000 in their checking account at West Side. The balance in the West Side account remained less than $ 6,000 until a deposit of $ 76,000, described below, was made on January 22, 1982, when Mr. Schmick presented *684 petitioner's check to West Side for payment. Petitioners had maintained accounts with West Side since 1974. In 1981, petitioners granted West Side a first deed of trust on their new residence located at 12730 Spruce Pond Drive, St. Louis, Missouri, in the amount of $ 140,000. The fair market value of the home at the time the mortgage was granted was $ 315,000. On December 29, 1981, the fair market value of the home was $ 400,000. Petitioners additionally pledged stock valued, as of December 1981, at approximately $ 41,000, as collateral for outstanding loans totaling $ 17,697. Petitioners applied for a personal loan from NSLT in the amount of $ 76,000, pledging their home on Spruce Pond Drive as collateral. On January 22, 1982, NSLT approved the loan, and petitioners signed the note and authorized the loan proceeds to be wired from NSLT to West Side. On the same day, petitioner's check to NSLT for $ 75,000 [2] dated December 20, 1981, was presented to West Side for payment by Mr. Schmick of NSLT. Mr. Schmick endorsed the check payable to "North St. Louis Trust" as follows: "TO PURCHASE CASHIERS CHECK GEORGE R. SCHMICK VICE PRESIDENT", accompanied by his signature. Upon presentment *685 of the check to West Side, Mr. Schmick purchased a cashier's check (#48375) for $ 75,000 payable to NSLT. He immediately applied the cashier's check to the amount petitioners owed NSLT on their personal guarantee of the A/U obligation. OPINION Payment of Guarantee With a Subsequent Note
Respondent determined that petitioners' use of proceeds from a second loan to satisfy the personal guarantee on a prior loan did not constitute a payment eligible for deduction under section 166. Respondent's determination *686 is presumed correct and petitioners bear the burden of proving respondent erred. Rule 142(a); Welch v. Halvering, 290 U.S. 111 (1933). Section 166(a)(1) provides: "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." When a taxpayer agrees to guarantee a debt in the course of his trade or business, a payment by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor is treated as a business debt becoming worthless in the taxable year in which the payment is made. Sec. 1.166-9(a), Income Tax Regs.
It is well established that no deduction for a bad debt or a loss is available to a cash basis taxpayer unless the taxpayer has made an outlay of cash or of property having a cash value. Helvering v. Price, 309 U.S. 409 (1940). Additionally, it is well established that the substitution of a guarantor's personal note for that of the primary obligor in satisfaction of the guarantor's guarantee does not constitute such an outlay until the note is actually paid. Eckert v. Burnet, 283 U.S. 140 (1931); see also Crain v. Commissioner, 75 F.2d 962 (8th Cir. 1935); *687 Black Gold Energy Corp. v. Commissioner, 99 T.C.     (1992). When a cash basis taxpayer gives a note in payment of his indebtedness as a guarantor, it is not considered a payment of a debt until payment is made on the note even though the note is secured by property of the guarantor in addition to the property securing the indebtedness guaranteed. Perry v. Commissioner, 49 T.C. 508, 522 (1968). In accordance with those principles, respondent contends that where one note is substituted for another with the same lender, payment has not been effected by a cash basis taxpayer. Watson v. Commissioner, 8 T.C. 569 (1947); Ferris v. Commissioner, 38 B.T.A. 312 (1938), affd. per curiam 102 F.2d 985 (2d Cir. 1939). In Ferris, the taxpayer gave his creditor a check drawn on an account increased with the proceeds of a new note from the taxpayer to the creditor. The Court held that the payment failed to qualify as a payment for tax purposes, finding that "the second borrowing was for the express purpose, and on the specific condition, of a repayment of the first. *688 The intermediate step of crediting petitioner's account and checking against it was inconsequential and immaterial." Ferris v. Commissioner,supra at 317; see also Rubnitz v. Commissioner, 67 T.C. 621 (1977) (deduction denied because the borrowed funds were deposited in accounts maintained with the lender). However, the decisions in Ferris and Watson can be distinguished from the case at hand. In both Ferris and Watson the taxpayers maintained their bank accounts at the same banks from which the loans were obtained. The banks in both cases merely credited the loan proceeds to the taxpayers' accounts and immediately charged the accounts for the amounts at issue. Even though the loan proceeds were first credited to the accounts, the lenders retained control over the proceeds by virtue of the accounts being maintained with the lenders. See Heyman v. Commissioner, 70 T.C. 482, 486 (1978), affd. without published opinion 633 F.2d 215 (6th Cir. 1980), affd. 652 F.2d 598 (6th Cir. 1980). We have consistently held that *689 payment of an otherwise deductible item with borrowed funds will be recognized for tax purposes unless the lender retains unrestricted control over the loan proceeds. Heyman v. Commissioner, supra; Burgess v. Commissioner, 8 T.C. 47 (1947). Consequently, the central element to be focused on is the lender's control. In Burgess, a cash basis taxpayer borrowed amounts from a collateral note dealer totaling $ 203,988.90. The interest due was to be prepaid and totaled $ 4,136.44. Prior to the due date of the interest, the taxpayer borrowed an additional $ 4,000 from the note dealer. The sum was subsequently deposited in the taxpayer's account at a bank and commingled with the existing funds. Shortly after the deposit, the taxpayer wrote a check on the account to cover the interest due on both loans. The Commissioner contended that the taxpayer had in effect merely substituted a note for the interest due and thus disallowed the interest deduction. Burgess v. Commissioner, supra at 48-49. We determined that the payment of interest with funds borrowed from the lender had occurred *690 where the lender gave up control of the borrowed funds, the funds were commingled with the borrower's own funds in another bank, and then the commingled funds were used to prepay interest. Id. at 50. Another case in point is Burck v. Commissioner, 63 T.C. 556 (1975), affd. 533 F.2d 768 (2d Cir. 1976). In Burck, the cash basis taxpayer borrowed $ 5,388,600 in December from a bank. A deposit of $ 1 million of the loan proceeds was made in the taxpayer's account at another bank. The $ 1 million was commingled with an already existing balance of $ 42,009.02 in the account. One day after the deposit to the bank account and pursuant to the loan agreement, the taxpayer paid $ 377,202 from the commingled funds to the lender, representing one year's interest on the loans. The Commissioner argued that the transaction in substance was a discounted loan. We noted that the loan proceeds were not required for the taxpayer to make the interest payment. The taxpayer maintained ownership of substantial assets from which the interest could have been repaid, if necessary. Therefore, we concluded the *691 facts were within the scope of Burgess, and held that the deduction was permissible. Id. at 559. The holding in Burgess v. Commissioner, supra, has been subject to criticism and close scrutiny in subsequent decisions involving situations in which the taxpayers had obtained a second loan from the same lender and attempted to claim a deduction for interest paid on the first loan, even though the interest was paid with the proceeds of the second loan. In Battelstein v. Internal Revenue Service, 631 F.2d 1182 (5th Cir. 1980), the court stated that under the holding in Burgess, a taxpayer may be entitled to a deduction in a situation where the funds have been borrowed from the same lender to which they are paid only if the second loan was not for the purpose of financing the interest due on the first loan. The court noted that if the second loan was for the purpose of the financing the interest due on the first loan, then the taxpayer's interest obligation has not been paid but merely postponed. Id. at 1184-1185. The court made an important distinction: *692 Compare the situation in which a taxpayer borrows money from a certain lender, and then borrows money from a third party in order to pay the original lender the interest. In such a situation the interest is considered paid and deductible because the obligation as between the taxpayer and the original lender has not been postponed, it has been extinguished. [3] See, e.g., Crain v. Commissioner, 75 F.2d 962, 964 (8th Cir. 1935); McAdams v. Commissioner, 15 T.C. 231, 235 (1950) [affd. 198 F.2d 54 (5th Cir. 1952)]. Id. at 1184 n.3. In Menz v. Commissioner, 80 T.C. 1174, 1187 (1983), we maintained that from an analysis of the above-mentioned cases, it appeared that deductibility turned on whether *693 the taxpayer exercises "unrestricted control" over the money borrowed from the same lender. We indicated that the court in Battelstein determined that the unrestricted control, standing alone, was insufficient if the primary purpose for the second loan from the same lender was to finance interest on the prior loan. Id. at 1187-1188. Based upon the above line of cases, the central focus of deductibility is on the lender's control over the loan proceeds. Although these cases involved the payment of interest as opposed to the actual loan with the new proceeds, we find that the discussion of the lender's control is both useful and applicable to the facts of this case. In the case at hand, petitioner borrowed funds from NSLT but then wired those funds to a separate account at West Side. Unlike Watson v. Commissioner, 8 T.C. 569 (1947), and Ferris v. Commissioner, 38 B.T.A. 312 (1938), two banks were involved in petitioner's payment--NSLT and West Side. Additionally, the loan proceeds were commingled with an existing balance in petitioners' checking account of $ 4,145. However, petitioner *694 never actually acquired any "control" over the proceeds of the second loan. Petitioners signed the note for $ 76,000 on January 22, 1982, and simultaneously authorized Mr. Schmick to wire the funds to West Side. Immediately thereafter, Mr. Schmick personally presented the check he had held for nearly a month to West Side in exchange for a cashier's check. We find it difficult to characterize this scenario as giving petitioners control over the loan proceeds. Additionally, under Battelstein v. Internal Revenue Service, supra, and Menz v. Commissioner, supra, if the primary purpose of the second loan is to finance payment of the first loan, unrestricted control, standing alone, is insufficient to qualify the payment for a deduction. Petitioner testified, and we find, that the primary purpose of the second loan was to finance the payment of the first loan. In conclusion, petitioner failed to adequately prove that NSLT did not maintain unrestricted control. Petitioner also failed to prove that there was an alternative purpose of the second loan other than to finance the payment of the original guarantee. In *695 accordance, we hold that petitioner's payment to NSLT was a mere substitution of one note for another and therefore fails to qualify as a deduction under section 166. Timing of the Deduction
Even if we had found that the transaction was not a mere substitution of one note for another, the payment would still not qualify for a deduction in 1981. We agree with respondent's determination that the deduction of $ 76,000 was not allowable as a bad debt under section 166, because petitioner failed to establish that any amount was paid during 1981. Petitioners rely on the "relation back" doctrine in asserting that the payment was made in December 1981. It is well established that a payment by check is considered a conditional payment. Estate of Spiegel v. Commissioner, 12 T.C. 524 (1949). Under the doctrine of relation back, the payment is deemed to be paid on the date the check was delivered to the payee if it is honored upon presentment. Id. at 527-529. To come within the scope of this rule, the check, absent some extenuating circumstances, must be paid in the ordinary course of business or at least be delivered *696 to the payee without restriction on payment. Id. at 533. Petitioners thus claim that although the check to NSLT was not presented for payment until January 22, 1982, the payment nevertheless related back to the alleged date of delivery, December 20, 1981. In addressing the fact that there were insufficient funds in their account until the date the check was presented, petitioners maintain that this will not defeat the application of the relation back doctrine unless one of the following situations is present. First, the doctrine will be defeated if an agreement exists that the payee will not cash the check until the following year. Fischer v. Commissioner, 14 T.C. 792, 802 (1950). Second, the doctrine will be inapplicable if the payee knows there are insufficient funds and therefore refrains from cashing the check. Goodman v. Commissioner, a Memorandum Opinion of this Court dated Dec. 18, 1946. Petitioners tried to refute the possibility of either of these situations by offering the testimony of Mr. W. G. King, president of West Side. Mr. King testified that, based on petitioners' collateral position with the *697 bank, the check would have been honored notwithstanding the small balance in petitioners' checking account. Relying on Mr. King's testimony, petitioners contend that the check would have been honored upon presentment, even if presented before the loan proceeds were deposited, and therefore, under the relation back doctrine, the payment date would still be December 20, 1981. Respondent contends that petitioner's payment does not fall under the protection of the relation back doctrine as announced in Estate of Spiegel v. Commissioner, supra, but rather falls within the exceptions to the doctrine. Respondent argues that petitioners fail to meet any of the elements in the three-prong test set out in Estate of Spiegel. Respondent claims that the date of delivery is unclear, that the delivery was conditional, and that the check was not presented in due course for payment. We agree with respondent. Under the relation back doctrine, the first prong is the date of delivery during the tax year. Id. at 533. It is well established that cash basis taxpayers may deduct expenses only for the taxable year in which the expenses *698 were paid. Sec. 1.461-1(a)(1), Income Tax Regs. Petitioner testified that he delivered the check to Mr. Schmick at his bank office on December 20, 1981, despite the fact that it was a Sunday. Mr. Schmick initially testified that he received the check on December 20, 1981, but later testified that he received the check within 1 or 2 days of the date on the check. This disparity in testimony makes the actual delivery date questionable. Petitioners offered no other evidence to firmly establish the date of delivery. Therefore, petitioners failed to meet their burden of proving that the check was delivered in the 1981 tax year. In addition, petitioners failed to meet the second prong of the relation back doctrine, that the check be delivered without any conditions on payment. Petitioners contend that they had the ability to satisfy their obligation to NSLT at any time prior to January 22, 1982, and therefore no conditions were placed on the payment of the check. Petitioners assert that there was no agreement between them and Mr. Schmick not to cash the check, thus escaping the applicability of Fischer v. Commissioner, supra.
Additionally, petitioners *699 conclude that Mr. Schmick's decision to delay cashing the check until January 1982 was an exercise of his business judgment. Mr. Schmick testified that he delayed in cashing the check because he was waiting for payment of the other two guarantors' obligations and wanted to avoid the possibility of a partial settlement with petitioners. However, petitioners failed to offer any evidence that confirmed payments were made by the other two guarantors prior to NSLT's presentment of petitioner's check for payment on January 22, 1982. In assessing whether the delivery to NSLT was conditional, we find petitioners' arguments unpersuasive. Petitioner testified that the purpose of the loan was to cover the check. Mr. Schmick testified that he solicited the loan from petitioners. Neither petitioner nor Mr. Schmick offered any other possible purpose for the loan other than to cover the check. The time gap between presentment and the actual cashing of the check is further evidence of an understanding between NSLT and petitioner. It is reasonable to conclude that Mr. Schmick and NSLT were fully aware of the purpose of the loan and consequently that there were insufficient funds in petitioners' *700 accounts to cover the check. If the payee knows that the payor has insufficient funds and thereby refrains from cashing the check, the relation back doctrine is inapplicable. Goodman v. Commissioner, a Memorandum Opinion of this Court dated Dec. 18, 1946. Therefore, we agree with respondent and find that NSLT delayed in cashing the check until a loan was made to petitioners to cover the check, thus making the delivery conditional. The final prong of the relation back doctrine is that the check must be paid when presented in due course. Petitioners argue that Mr. Schmick's decision to hold petitioner's check was made in the ordinary course of NSLT's business and thus the check should be deemed to have cleared in the ordinary course of business. In Estate of Spiegel v. Commissioner, 12 T.C. 524 (1949), we announced that the critical point in cases involving the relation back doctrine is that the checks were promptly presented and were duly paid upon presentation. Id. at 530. In Cain-White v. Commissioner, T.C. Memo. 1978-438, the taxpayer made two payments by check of $ 15,000 each *701 to its profit-sharing plan on the day before the end of its fiscal year. The checks were not paid until nearly 2-1/2 months after their having been drawn. The taxpayers offered no evidence to explain the delay. We held that this delay in payment was not in the ordinary course of business. Therefore, the deduction was disallowed. Id. If petitioner in the case at hand actually presented the check on December 20, 1981, 33 days passed before the check was drawn. We find it difficult to characterize a delay of 33 days before cashing as prompt presentment. We are not persuaded that the bank held the check solely under a "business judgment" justification. Therefore, we find that NSLT's delay in cashing petitioner's check was not in the ordinary course of business. In summary, we conclude that petitioner's delivery of the check to NSLT was conditional in that the bank was aware of petitioners' insufficient funds to cover the check, and NSLT's delay in cashing the check was not in the ordinary course of business. As a result, we find that payment of petitioners' guarantee did not occur in the 1981 tax year. Therefore, the deficiency as set forth in respondent's notice of deficiency, *702 disallowing the deduction in the 1981 tax year, is correct. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The amount of the note signed by petitioners was for $ 76,000. The amount that petitioners claimed as a deduction on their 1981 Form 1040, Schedule C, was $ 76,000. However, the amount that petitioners owed NSLT on their personal guarantee of the corporate debt was $ 75,000. Nevertheless, petitioner testified that he did not realize the $ 1,000 discrepancy until it was pointed out to him during his testimony. As a result, petitioner testified that the amount of the deduction in dispute should be $ 75,000.↩
3. Accordingly, we would like to note that if petitioner in the case at hand had borrowed the funds from West Side instead of NSLT, the payment to NSLT would have qualified for a deduction under sec. 166↩.